## The Mutual Benefit Life Insurance Company *versus* Bales et al.

1. The Act of April 4th 1873, having prohibited foreign insurance companies from doing business in this state through sub-agents, without the appointment of such sub-agent being duly certified, and the agent commissioned by the insurance commissioner, it is the duty of such insurance company to see that such agents are commissioned, and unless that is done, the company cannot recover from sureties money received by the agent when not commissioned.

2. On March 19th 1874, a company certified the appointment of B. to the commissioner, and the latter issued his certificate that B. was duly authorized to transact business as agent of the company, for and during the current year. On the 26th of April 1875, a like certificate was issued, and a similar one April 12th 1876, certifying that the said B. was duly authorized to transact business as agent of the company for and during the current year, and that was the last certificate issued to B. After the first of January 1877, and prior to the 12th day of April 1877, it was claimed that B. had received of the company's money $564.58, and that after the 12th day of April 1877, and prior to the 22d day of May 1877, received the additional sum of $1425.13 in money belonging to the company. These amounts, with interest, the company claimed to recover from the bondsmen of B. *Held*, that the authority to B. to act as the agent of the company, under the certificate of the commissioner, expired by its own limitation December 31st 1876, which was the end of the "current year;" that thereafter B. was not legally qualified to act as agent, and that his bondsmen were not liable for his acts after that time.

3. Thorne *v.* Travellers' Ins. Co., 30 P. F. Smith 15, followed.

November 28th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Crawford county*: Of October and November Term 1879, No. 326.

Debt by the Mutual Benefit Life Insurance Company against Marion T. Bales and C. B. Caldwell, Henry C. Davis and Charles

Beirschmitt, his sureties, on a bond given by said Bales to the plaintiff company.

The following was the opinion of the court below, Taylor, P. J., in which the facts are fully stated:

"The plaintiff is a foreign life insurance company, located at Newark, in the state of New Jersey. Marion T. Bales, one of the defendants, was its agent, and as such received certain premiums, which, it is claimed, he neglected or refused to pay over, amounting in the aggregate to the sum of $1989.71; and this action is brought against the agent and his sureties jointly, to recover the amount received, with the interest accrued.

"The facts given in evidence, and which are admitted, are briefly as follows: March 2d 1874, Bales was duly appointed the agent of the company, for the purpose and within the district specified in the written agreement. On the 28th of the succeeding April, he executed and delivered to the company his bond in the sum of $5000, conditioned for the faithful performance of his duties as their agent, with Chauncey B. Caldwell and the other defendants as his sureties. March 19th 1874, the company having complied with the requirement of the Act of the 4th of April 1873, and certified the appointment of Bales to the insurance commissioner, he issued his certificate, under the official seal of the department, certifying that said Bales was duly authorized to transact business, as agent of the company, for and during the current year. April 26th 1875, a like certificate was issued, and a similar one April 12th 1876, which was the last one issued to Bales, who was, on the 19th of May 1877, notified of the appointment of another agent; and on May 22d 1877, William H. Woodruff was certified by the insurance commissioner, as the authorized agent of the company, in the stead of Bales. May 12th 1878, the commissioner certified that the company had complied in all respects with the requirements of the law. Bales was indebted to the company for moneys received by him, as their agent, after the 1st of January 1877; and prior to the 12th of April next succeeding, in the sum of $564.58; and after the 12th of April, and prior to the 22d of May 1877, he in like manner received the additional sum of $1425.13, which was also owing to the plaintiff.

"The plaintiff's points were answered *pro forma* in the affirmative, and the defendants' in like manner negatived, and the jury instructed to find for the plaintiff the sum of $2176.65, being the whole amount admitted to be due, with interest to date; and also to find specially, 1st, the amount received after the 1st of January, and prior to the 12th of April 1877; and 2d, the amount received after the 12th of April, and prior to the 22d day of May succeeding; the court reserving the question, 1st, whether, upon the facts admitted, proven and heretofore stated, the plaintiff was entitled to recover; 2d, whether the amount received after the 1st of January

11 NORRIS—23

1877, and prior to the succeeding 12th of April, was not unlawfully received, by reason of neglect of the company, or the agent, Bales, in not taking out the certificate, required by the 11th section of the Act of April 4th 1873; and, 3d, whether the amount received after the 12th of April was not, for the same reason, unlawful, and the sureties thereby released. If the court should be of the opinion, that the plaintiff was entitled to recover the whole amount admitted to be due, the judgment to be entered for the plaintiff for the same, upon the verdict. If the court should be of the opinion, that the plaintiff was entitled to recover the amount received prior to the 12th of April 1877, but not what was afterwards received, then judgment upon the special verdict for the amount thus found due. But if the court should be of the opinion, that the plaintiff was not entitled to recover, then judgment to be entered for the defendants *non obstante veredicto.*

" In one view of the case it is somewhat remarkable, as but one authority was cited upon the argument; both plaintiff and defendants relying upon it to sustain their widely different views.

" The 9th section of the Act of 4th of April 1873, provides ' it shall be unlawful for any person, company, or corporation to negotiate or solicit, within this state, any contract of insurance, or to effect an insurance, or insurances, or pretend to effect the same, or to receive and transmit any offer or offers of insurance, or receive or deliver a policy or policies of insurance, or in any manner to aid in the transaction of the business of insurance, without complying fully with the provisions of this act.'

" The 10th section provides, inter alia, that ' no person shall act as agent, or solicitor in this state, of any insurance company of another state or foreign government in any manner whatever relating to risks, until the provisions of this act have been complied with on the part of the company or association, and there has been granted to said company or association, by the commissioner, a certificate of authority showing that the company or association is authorized to transact business in this state.'    *    *

" The 11th section recites that ' companies to which certificates of authority are issued, as provided in the preceding section, shall from time to time certify to the commissioner the names of the agents appointed by them to solicit risks in this state; and no such agent shall transact business until he has procured from the commissioner a certificate showing that the company has complied with the requirements of this act; and that the person named in such certificate has been duly appointed its agent.'

" This act, like the Act of 1868, which it supplied and repealed, is a remedial statute, and is to be so construed as to suppress the mischief and advance the remedy. The mischief sought to be remedied, was the imposition by foreign insurance companies,

some of them worthless, upon the citizens of Pennsylvania, and the defrauding the state of its revenue.

"The Act of 1868 provided for the taking out a license. This clause is omitted in the Act of 1873, but the latter requires in effect the same thing, viz. : the procuring of a certificate from the insurance commissioner; the difference is more in name than substance.

"That the legislature intended by the certificate required by the 11th section of the Act of 1873, something more than the mere evidence of the appointment of the agent, is evidenced by the language employed. 'No such agent shall transact business until he has procured from the commissioner a certificate showing that the company has complied with the requirements of this act.' If the design of the legislature in requiring this certificate was simply the evidence of the appointment of the agent, why specify that such certificate should show upon its face that the company had complied with the requirements of the law? The object was the protection of the citizens of our own Commonwealth, not only from the acts of unauthorized agents, but also from worthless companies. The language of this section is just as important as that of the 10th section, requiring the company to procure a certificate. The 9th section makes it unlawful to transact any business, 'or to in any manner aid in the transaction of the business of insurance without complying fully with the provisions of this act.' The requirements of the act cannot be held to have been fully complied with when no certificate has been issued to the agent. It is this alone that authorizes him to act. Without it all his acts as agent of the company are in direct violation of a positive mandate of the law. They are unlawful, and being so, under the ruling in Thorne v. The Travellers' Insurance Co., 30 P. F. Smith 15, the sureties cannot be held for such unlawful acts. We have not overlooked the dictum near the close of the opinion in this case. The principle enunciated in the case is that the company must show affirmatively that they have complied with all the requirements of the law; and if they have not done so the acts of the agent are illegal, and his sureties cannot be held for such acts. This is placed above the consideration of private interest, and upon the ground of public policy. We have not the egotism to assume that we can add anything to the able reasoning of the learned justice who delivered the opinion in this case.

"It is contended on the part of the plaintiff, that the company having certified the name of the agent to the commissioner, and procured his certificate, that they had in all respects complied with the law; that it was the duty of the agent to take out the certificate required by the 11th section, and his neglect to do so cannot be interposed as a bar to a recovery in this action against him and his sureties. The certificate of the insurance commissioner that

tne company had complied with the law, would undoubtedly be prima facia evidence that they had done so; but it is not conclusive. It is admitted that the certificate of April 12th 1876, is the last one issued to Bales. It was for the current year. If after the expiration of the certificate, he transacted business for the company, it was done in direct violation of the statutes, and no general certificate of the commissioner, issued to the company, May 12th 1878, could galvanize their acts into lawfully authorized ones. If it primarily was the duty of the agent to take out this certificate, it was also the duty of the company to see that he performed no act relating to the business of insurance, as their agent, until the provisions of the act were fully complied with. The act of the agent was the act of the principal, and the company could perform no act without the intervention of an agent, within the scope of his authority, his act was their act, and his neglect their neglect.

"Having reached the conclusion that the certificate required by the 11th section was something more than a mere matter of form; that it was of such vital importance that acts performed by the agent without such certificate were unlawful, it remains but to inquire at what time the certificate issued April 12th 1876, expired. By the express terms of the certificate Bales was the authorized agent of the company for the current year. In the absence of anything appearing to the contrary, the current year was the year 1876; it expired on the 31st of December 1876. Bouvier defines it as 'a term used to express present time; the current month is the present month.' Webster says 'now passing; present in its course; as, the current month or year.' That the words 'current year' were intended to express a definite period of time is evidenced by the fact that it twice appears in the certificate; 1st in certifying that the company was authorized to transact business in this state, 'during the current year,' and again that Marion T. Bales was the authorized agent of the company 'for and during the current year.' Referring to the 10th section of the act it provides, inter alia: 'And it shall be the duty of every such company or association authorized to transact business in this state, to make report to the commissioner in the month of January of each year, under oath of the president or secretary thereof, showing the entire amount of premiums received by said company or association in this state during the year or fraction of the year ending with the 31st day of December preceding.' * * * In the light of this section the words 'current year' in the certificate are clearly defined, for it is clear that there was to be an annual statement, and balance struck. The certificate to Bales authorized him to act for and during the current year; his authority expired with the 31st of December 1876; every act of his as agent for the company after this date was without authority—against the explicit requirements of the statute, and under the 9th and 11th sections of the act unlawful,

being such under the authority above referred to.   The sureties cannot be held responsible for such unlawful acts of the agent; and as this action is joint, it cannot be sustained.   The plaintiff's points, so far as they are inconsistent with the views herein expressed, are answered in the negative; the defendants'· affirmed, and judgment must be entered for the defendants *non obstante veredicto*."

The following were the points of plaintiff:

1. That the certified copies of the records and papers on file in the department of insurance of the Commonwealth of Pennsylvania, show a full and complete compliance, on the part of the plaintiff company, with the law of the state regulating foreign insurance companies.

2. That the plaintiff company having complied with the requirements of law, and being lawfully empowered to transact the business of life insurance in the state, and having duly certified the name of the defendant, Bales, to the commissioner of insurance as one of its agents, it was the duty of said Bales to procure from the commissioner of insurance a license authorizing him to act as such agent, whenever such license became necessary by the expiration of a former one, and if he failed to do so, neither he nor his sureties can set up the want of such license as a defence in this action.

3. That under the evidence·in this case, the defendant, Bales, continued as the agent of the plaintiff company until the name of William M. Woodruff was certified to the insurance department, and was appointed by the company its agent in his stead, unless he sooner resigned or was dismissed by the company.

The following were defendants' points:

1. That the plaintiff can only recover on the bond in question against the sureties in this case, for money received by the defendant, Bales, while he was the agent of the plaintiff company, duly appointed and qualified to act as such agent by the law.

2. That after April 12th 1877, Bales was not legally qualified to act as the agent of the plaintiff company, and that his sureties were not liable for any money received by him after said date.

3. That the certificate given to Bales, April 12th 1876, expired by its own conditions, on the 12th of April 1877; that Bales was not legally qualified to act thereafter as agent of the company; and that his bondsmen are not liable for any money received after that date.

4. That the fact that no certificate was issued to Bales after April 12th 1877, raises the presumption that the appointment was revoked at that date; and that in the absence of proof to the contrary, the presumption is that his appointment was revoked at that date.

5. The Act of 1873 having prohibited foreign insurance com-

panies from doing business in this state through sub-agents, without the appointment of such sub-agent being duly certified, and the agent commissioned by the insurance commissioner; that it is the duty of such insurance company to see that such agents are commissioned, and unless that is done, the company cannot recover from the sureties for money received by the agent when not commissioned.

The company took this writ and, inter alia, alleged that the court erred in the answers to the above points, and in entering judgment for defendants.

*D. C. McCoy*, for plaintiff in error.—It is not to be presumed, that the legislature intended more than that there should be a fair, reasonable and substantial compliance with the law; or that it was intended that a dishonest agent should be allowed, on a mere technicality, to retain the money of a company which he admits he has and has no just reason for retaining or refusing to pay.

It was plainly the duty of Bales to procure a certificate from the commissioner, and his failure to procure it cannot be set up by him or his sureties as a defence.

It is confidently believed, that the position that the certificate expired on the 31st of December, and that, consequently, the agent was violating the law, and because he was, that the company was also, until another was issued, is not well taken. The commissioner certainly did not so regard it. He certainly would not solemnly certify year after year, that the company and its agent were complying with the law, if they were in fact violating it during one-third of the time. The fact that the companies are required to make reports to the department in each January, up to and including the 31st of December, only shows that the reports were to be made then. This is merely an arbitrary provision of the statute, as some time had to be fixed, and is evidence of nothing, except what it provides.

*John B. Compton, Wm. R. Bole* and *A. G. Church*, for defendants in error.—The authority of Bales to act as the agent of the plaintiff's company, under the certificate of the commissioner, expired by its own limitation, December 31st 1876. That was the end of the current year for which it was granted. Notwithstanding the fact that Bales had no legal authority to act as agent of the company, and both the company and Bales were forbidden by law to do business through him as agent without such legal qualifications, the company through Bales did carry on their business of insurance; and they now seek to hold the bondsmen of Bales, for acts done by him, when he was in no sense the lawful agent of the company, and was not authorized to do business for it. The undertaking of the bondsmen was to answer for the acts of

[Mutual Benefit Life Ins. Co. v. Bales.]

Bales, when lawfully qualified to act as agent for the company and not otherwise. After the expiration of his agency, they were not bound by the terms of their undertaking to answer for his acts. The statute pointed out the only mode by which he could be legally qualified to act as the agent of the company, and it was the duty of the company to see that he was so qualified. Without the certificate he had no right to act, and was in no proper sense the agent of the company. His bondsmen are therefore not liable for acts done by him.

The judgment of the Supreme Court was entered January 5th 1880.

PER CURIAM.—We affirm this judgment upon the opinion of the learned judge of the court below, on the points reserved. The case indeed, is ruled by Thorne v. Travellers' Insurance Co., 30 P. F. Smith 15.

Judgment affirmed.